UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| USW INDUSTRY 401(k) FUND and Its Trustees: STAN JOHNSON, DALE OLSON, GARY BEEVERS, JAMES KIDDER, MARK ENTRINGER, and JON GEENEN, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:12-cv-833 |
| v. | ) ) | Judge Sharp |
| DETROIT BOX COMPANY, d/b/a INTERGRATED PACKAGING CORP., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM

The USW Industry 401(k) Fund provides retirement benefits to the eligible employees of Detroit Box Company by virtue of collective-bargaining agreements the company maintains with the United Steelworkers (USW) Local 2-842, a labor union. After an audit identified delinquent contributions that Detroit Box was required to make to the Fund, the Fund demanded payment. Detroit Box did not pay, so the Fund filed this suit seeking a monetary judgment and injunctive relief that compel Detroit Box to comply with its contribution obligation in the future. Pending before the Court is the Fund's motion for summary judgment. (Docket No. 38). For the reasons that follow, the Court will GRANT that motion.

## BACKGROUND

This case turns on four interrelated agreements that are binding on Detroit Box. First, in 2002, Detroit Box entered into a collective-bargaining agreement (CBA) with USW Local 2-842. This CBA, in effect from June 9, 2002, to June 8, 2007, required Detroit Box to "contribute two

2

percent (2%) of the total hours, on the base rate for full-time employees only," to a retirement vehicle of the parties' choosing. (Docket No. 38-4 at 6).

Second, on November 22, 2002, Detroit Box, the Fund, and USW Local 2-842 signed a Standard Form of Agreement for Participation (SFA) in the USW Industry 401(k) Fund. Like the CBA, the SFA required Detroit Box to make monthly contributions to the Fund equal to "2% of [the] gross income" of each eligible individual performing work under the CBA. (Docket No. 38-6 at 2). It specified that Detroit Box would pay on "Hours worked, Vacation, Overtime, Jury duty, Holidays, [and] Leave Granted" under the CBA. (*Id.*). The SFA also required the company to forward all contributions in the form of employee elective deferrals and employee loan repayments to the Fund each month. (*Id.* at 3). In the event of delinquency, the SFA stated that, "in addition to the contributions due, [Detroit Box] shall also pay to the Fund (a) interest on delinquencies calculated at the Federal Fund's Discount Rate plus 2% on the day the delinquency occurs, (b) liquidated damages of 20% on delinquent contributions, and (c) all costs of collection (including, without limitations, attorneys' fees and disbursements)." (*Id.* at 2).

Third, under the SFA, Detroit Box agreed to "become a party to the Agreement and Declaration of Trust establishing the said Fund . . . and agree[d] to be bound by all the terms and provisions of said Agreement." (Id. at 1). The Trust Agreement confers on the Fund the "authority to retain an accountant or accounting firm to perform payroll audits of [Detroit Box] to determine whether the correct amount of Contributions were being made." (Docket No. 38-2 at 17).

Fourth, the Fund adopted a separate "Policy for the Collection of Delinquent Contributions," which similarly gives the Fund "the right to require that a delinquent employer pay the cost of an audit, interest, attorneys' fees, and any other expenses incurred by the Fund in

3

determining the amount of a delinquency and collecting a delinquency." (Docket No. 38-3 at 1). This policy specifies that the "[c]osts for payroll audits are paid by the Fund except that in the case where an employer underpaid contributions during the audit period, in an amount that is the greater of $5,000 or 5% of the contributions of the employer, payroll audit costs will be charged to the employer." (*Id*. at 7).

When the 2002 CBA expired in June 2007, Detroit Box entered into a successor CBA that ran through December 31, 2011. The successor agreement did not make any relevant changes to Detroit Box's obligations or the Fund's rights. (Docket No. 38-5 at 24). Detroit Box also signed a new SFA that was substantively similar to the first one. (Docket No. 38-7 at 1–2).

In 2009, the Fund's auditors determined that Detroit Box owed $23,384.36 in contributions it failed to make on behalf of its employees from January 2004 through December 2006. (Docket No 38-1 at 4). The cost of the audit was $7,178.95. (*Id*.). As of June 30, 2013 (about a month before the Fund filed the pending summary-judgment motion), interest on these unpaid contributions totaled $9,337.86. The Fund and its counsel sent Detroit Box notification and demand letters concerning the deficiencies the 2009 audit revealed on April 1, 2009, August 18, 2010, December 12, 2011, and June 13, 2012. (Docket Nos. 38-8, 38-9, 38-10, 38-11).

The Fund performed a second payroll audit in 2012 that covered the period from January 2007 through December 2010. The second audit showed that Detroit Box owed the Fund $6,990.32 in delinquent contributions, $13,820.26 in audit costs, and $884.40 in interest accrued through June 30, 2013. (Docket No 38-1 at 5). The Fund and its counsel sent Detroit Box letters demanding payment for the delinquent amounts associated with the second payroll audit on January 4, 2013, February 22, 2013, and April 23, 2013. (Docket Nos. 38-12, 38-13, 38-14).

4

In addition to the amounts owed in connection with the two audits, the Fund determined that Detroit Box also failed to remit elective deferrals and loan repayments it deducted from employee paychecks, as well as non-elective employer contributions the company owed, from January 2011 to May 2012 in the amount of $4,035.97. (Docket No. 38-1 at 5). Interest on these unpaid contributions as of June 30, 2013, totaled $1,678.45. (*Id.*).

In all, the Fund claims that Detroit Box owes it $79,211.28. This amount includes the figures discussed above, as well as liquidated damages totaling $11,900.71 (equal to the interest on all delinquent contributions as of June 30, 2013). It does not include attorneys' fees and costs. When the Fund filed the pending motion, Detroit Box had not paid any of these allegedly delinquent contributions.

The Fund is a multi-employer employee-benefit plan within the meaning of Sections 3(3) and 3(37) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1002(3) and 1002(37). Its one-count complaint alleges that Detroit Box violated Section 515 of ERISA, which states that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The Fund hopes to recover the delinquent contributions and employee deferrals, interest, liquidated damages, and attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(2). The pending summary-judgment motion pertains to all issues except for attorneys' fees, which the Fund intends to seek by separate motion.

## LEGAL STANDARD

A party may obtain summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question is whether any genuine issue of material fact is in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported summary-judgment motion, the nonmoving party must set forth specific facts that show a genuine issue of material fact for trial. If the party does not do so, summary judgment may be entered. Fed. R. Civ. P. 56(e). The nonmoving party's burden to point to evidence demonstrating a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## ANALYSIS

Detroit Box lodges three arguments against the Fund's motion, none of them convincing. First, Detroit Box says the Court must deny the motion due to several procedural defects. Specifically, the company faults the Fund for not including a statement of material facts, as Local Rule 56.01(b) requires, and for not filing a memorandum in support of the motion citing record evidence that shows that material facts are not genuinely in dispute. (Docket No. 40 at 1–

2).  Just one problem stands in Detroit Box's way:  the Fund submitted both documents with its motion.  (Docket No. 38-16 (statement of facts); 38-17 (memorandum)).

Second, Detroit Box assails the affidavit of Fund Administrator Maria Wieck that the Fund filed in support of its motion, insisting that it contains exhibits—namely, five notice and demand letters the Fund sent the company—that would be inadmissible at trial.  (Docket No. 40 at 2–3).  The company complains that Wieck lacks foundation to discuss the exhibits, which are not authenticated in the affidavit and contain hearsay.  Detroit Box is mistaken.  Wieck attests— "based on [her] personal knowledge" and as the person "responsible for overseeing the assessment of delinquent contributions" and controlling the Fund's records regarding Detroit Box—that the Fund conducted payroll audits of Detroit Box in 2009 and 2012, and reported those audits to Detroit Box by various letters.  (Docket No. 38-1 at 1, 4–5).  The Court discerns no issues with the admissibility of these exhibits.

Third, Detroit Box points to two affidavits submitted in opposition to the Fund's motion, which, the company says, demonstrate the case must go to a jury.  The affidavit of Lewis Powell, Detroit Box's Chief Financial Officer, states that while the company agreed to pay 2% of total hours at base rate," Detroit Box never agreed to the language in the SFA, which commits the company to make contributions of "2% of gross income based on hours worked, vacation, overtime, jury duty, holidays, and leave granted."  (Docket No. 40 at 7).  Powell suggests that this latter commitment is invalid because the company only bargained for the terms in the CBA, and that Detroit Box did not authorize its representatives "to sign any other document or enter into any other agreement which in any way altered what the CBA specified was the Company's contribution obligation to the 401(k) Fund."  (*Id.*).

Powell's affidavit does not create a genuine issue of material fact.  First, Detroit Box's representatives agreed to and specifically signed two separate SFAs, which contain the allegedly commitment-altering language, in both 2002 and 2007.  Second, Powell's affidavit fails to explain how the formulation in the SFA changes the company's contribution obligation to reduce or eliminate the deficiencies the Fund alleges.  The Fund, on the other hand, asserts that the two expressions are "mathematically equivalent," and argues that, in any event, the SFA expressly supersedes the CBA to the extent one is inconsistent with the other.  (Docket Nos. 38-17 at 3 n.3; 38-6 at 1; 38-7 at 1).  Apart from its conclusory assertion that the formulations somehow differ, Detroit Box provides no support for the position Powell stakes out in his affidavit.

The second affidavit Detroit Box presents, from human-resources manager Tonia E. Ross, fares no better.  While Ross's affidavit purports to "specifically agree or dispute each fact" in Wieck's affidavit, (Docket No. 40 at 4), it falls well short of the task.  While Ross says it was her "understanding" that Detroit Box "was only required to make payments to the Fund based on the CBA then-in-effect," (*id*. at 13), she also admits that she has no knowledge of the Trust Agreement, the 2002 or 2007 SFAs, and the Fund's delinquency policy.  (*Id*.).  That ignorance of the procedures governing delinquencies does not prevent Ross from asserting that the company objects to the results of the audits, which presumably explains its failure to pay up.  Yet Ross fails to explain the basis of the company's disagreement with the Fund's calculations.  Nor does she point to a provision in any of the agreements that bind Detroit Box that arguably permit it to withhold contributions when it disputes the amount owed.  Ross's conclusory disputation of liability, without any evidentiary support, does not establish a genuine dispute of material fact.

## CONCLUSION

For the reasons stated, the Court will GRANT Plaintiffs' motion for summary judgment (Docket No. 38).

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE